**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190636-U

Order filed January 26, 2021
Modified Order Upon Denial of Rehearing filed March 4, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| ROBERT CRONHOLM, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Will County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-19-0636 |
| | ) | Circuit No. 18-MR-3131 |
| BOARD OF TRUSTEES OF THE | ) | |
| LOCKPORT TOWNSHIP FPD | ) | The Honorable |
| FIREFIGHTERS' PENSION FUND, | ) | John Anderson, |
| | ) | Judge, Presiding. |
| Defendant-Appellant. | ) | |

_____

PRESIDING JUSTICE McDADE delivered the judgment of the court.
Justice Lytton and Justice Wright concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:    Pension board that sought to modify a pensioner's final combined retirement benefit award approximately seven years after he retired and received his first monthly pension benefit payment lacked jurisdiction to modify its portion of pensioner's retirement benefit under section 4-138.10 of the Illinois Pension Code.

¶ 2    Defendant, Board of Trustees of the Lockport Township FPD Firefighters' Pension Fund,

appeals from a judgment of the Will County circuit court finding it lacked authority under

section 4-138.10 of the Illinois Pension Code to correct plaintiff Robert Cronholm's combined retirement pension benefit overpayment. We reverse the decision of the Board and remand to the Board with instructions to reinstate pensioner Cronholm's pre-modified monthly pension benefit.

¶ 3                                    I.  BACKGROUND

¶ 4        On November 26, 2018, Cronholm filed a complaint for administrative review and the matter was orally argued on June 25, 2019. On October 9, 2019, the trial court heard additional arguments regarding the section of the Illinois Pension Code at issue.

¶ 5        Cronholm joined the Lockport Township Fire Protection District ("Lockport FPD") on April 14, 1980. He became a member of the Lockport Township FPD Firefighters' Pension Fund ("Lockport Fund") that same day. Nearly four years later, on December 16, 1984, Cronholm left Lockport FPD and was hired by the Village of Oak Brook Fire Department ("Oak Brook") and was immediately enrolled as a member of the Oak Brook Pension Fund ("Oak Brook Fund"). On May 6, 2005, Cronholm returned to Lockport FPD, where he served as Fire Chief until his retirement on October 31, 2009.  Upon this re-hiring at Lockport FPD, Cronholm was immediately re-enrolled in the Lockport Fund.

¶ 6        On March 31, 2006, the Oak Brook Fund's Finance Director, Sharon Dangles ("Dangles"), sent a letter to the Lockport Fund's Board ("Lockport Board" or "the Board") detailing Cronholm's Oak Brook employment information for Lockport's assessment of Cronholm's future combined retirement benefit. Three pieces of information were wrongly reported in that letter: (1) Cronholm's hire date with Oak Brook was reported as October 16, 1984, as opposed to the correct date of December 16, 1984; (2) his retirement date was stated as May 6, 2006, rather than the correct retirement date of May 6, 2005; and (3) Cronholm's final salary was reported as $107, 093, rather than the correct salary of $107,693. Several days later,

in a revised letter, Cronholm's date of hire was corrected. Additionally, Lockport spotted and corrected Cronholm's retirement date error. However, the Lockport Fund still used the wrong final salary information to determine its portion of Cronholm's combined retirement benefit.

¶ 7     On October 8 and 9, 2009, Cronholm applied for a combined retirement benefit with the Oak Brook Fund and Lockport Fund, respectively. By November 2009, Cronholm's benefit applications had been granted, and he began drawing a combined retirement benefit proportionally from both pension funds. A combined retirement benefit requires participating pension funds to pay a proportional share of retirement benefits to the former employee. The funds have an inverse relationship: when one fund increases its share of benefits, the share of the other fund decreases.

¶ 8     On November 30, 2009, Dangles signed the retirement pension calculation benefit for Cronholm without realizing that two errors (Cronholm's final pensionable salary and final retirement date with Oak Brook) were still present. On January 2, 2010, Dangles notified Lauterbach & Amen (the Oak Brook Fund's outside accountants) that Cronholm's final pensionable salary had been incorrectly reported and provided the correct salary. Two days later Dangles signed Cronholm's revised Oak Brook Fund benefit calculation which still contained the wrong retirement date.

¶ 9     On April 22, 2010, six months after the Lockport and Oak Brook Funds began distributing their respective portions of Cronholm's retirement benefits, the Oak Brook Fund unilaterally increased Cronholm's share with a one-time payment of $53.34 and a reoccurring monthly increase of $26.67 to compensate for the mistake it discovered regarding Cronholm's final pensionable salary. During this process, Oak Brook also discovered and corrected the date of Cronholm's retirement from May 6, 2006 to May 6, 2005. The Lockport Fund was not

3

notified of these corrections and did not adjust its portion of Cronholm's benefit payments accordingly.

¶ 10 In late 2016, the Lockport Fund retained the accounting firm Lauterbach & Amen and its employee, Allison Barrett ("Barrett"), conducted a routine audit of all benefit recipients. At that time, Barrett discovered the Lockport Fund's years of overpayment benefits to Cronholm, and the Lockport Board invoked section 4-138.10 of the Illinois Pension Code to correct the overpayment and prospectively set its portion of Cronholm's monthly benefit to the proper amount. Barrett, on behalf of the Lockport Fund, sent letters to Cronholm on December 15, 2016, and February 24, 2017, notifying him of the overpayment error and offering him options to repay the overpaid sum. Specifically, Barrett's February 24, 2017, letter indicated the Lockport Fund had overpaid Cronholm a total of $21,118.44. After an error was noted in the calculation of overpayment benefits, the Board found and determined that Cronholm had been overpaid $2,455.28.

¶ 11 On May 12, 2017, the Board notified Cromholm that it had scheduled a special meeting on May 24, 2017, to prospectively correct its share of his combined retirement benefit. Cronholm was not present at that meeting and asked the Lockport Board to delay any discussion of the overpayment issue. At the May 24, 2017, meeting, the Lockport Board voted to make an interim prospective correction to its portion of Cronholm's retirement benefit, effective immediately, and continued the matter to September 12, 2018. On December 29, 2017, Cronholm's attorney filed a brief with the Board in opposition to the Board's benefit adjustment.

¶ 12 At the final hearing on the overpayment of Cronholm's benefits, held on September 12, 2018, the Board heard testimony from Barrett and permanently prospectively decreased Cronholm's monthly benefit to $4,880.38 per month. The Lockport Fund's twelve-page Findings

4

and Decision stated that multiple "clerical or administrative errors" had been committed that led to the error in Cronholm's combined retirement benefit payments and the Board had jurisdiction, pursuant to section 4-138.10 of the Illinois Pension Code, to prospectively correct Cronholm's retirement benefit. Because the error in Cronholm's retirement benefit had gone unnoticed for approximately seven years, the Board did not request that Cronholm repay the $2,455.28 it claimed he collected in error.

¶ 13     On October 9, 2019, the trial court reversed the Lockport Board's decision to correct Cronholm's overpayment benefit. The Board subsequently filed this timely appeal.

¶ 14                                    II.  ANALYSIS

¶ 15     The Lockport Board asserts that it can correct the "error" in Cronholm's combined retirement pension benefit discovered approximately seven years after Cronholm received his first monthly pension benefit payment. At issue is whether the Lockport Board has jurisdiction to modify its portion of Cronholm's combined pension benefit under section 4-138.10 of the Illinois Pension Code. Specifically, the Board contends that: (1) the general assembly meant for section 4-138.10 to apply prospectively and to correct pre-enactment benefit mistakes; (2) the 2014 enactment of section 4-138.10 is a procedural change, which can be applied retroactively; (3) the "mistake" that it corrected in this case was a clerical one that can be corrected retroactively under 4-138.10; and (4) that Cronholm has no constitutional or contractual right to continued overpayment.

¶ 16     The Board also asserts that the circuit court's reliance on *Ray v. Beussink & Hickman, P.C.*, 2018 IL App (5th) 170274, was inappropriate because that case was wrongly decided. As a preliminary matter, the court disagrees with the Lockport Board's claim that the circuit court's reliance upon *Ray* was inappropriate. Although the defendants do not believe *Ray* was properly

5

decided, the *Ray* decision, which uses the Supreme Court's analysis in *Landgraf v. USI Film Products*, 511 U.S. 244, 264 (1994), for guidance to determine whether a pension fund, such as the Lockport Fund, has the jurisdiction to modify a pensioner's retirement benefit, remains good law.

¶ 17    When undertaking administrative review, this court reviews the agency's decision, not the trial court's determination. *Anderson v. Department of Professional Regulation*, 348 Ill. App. 3d 554, 560, (2004).  An administrative agency's factual findings "are considered to be *prima facie* correct and will be reversed only if against the manifest weight of the evidence." *Doe Three v. Department of Public Health*, 2017 IL 162548, ¶ 25 (citing 735 ILCS 5/3-110 (West 2014)). "Questions of law are reviewed *de novo*." *Doe Three*, 2017 IL 162548, ¶ 25 (citing *MacDonald v. Board of Trustees of the Park Ridge Police Pension Fund*, 294 Ill. App. 3d 379, 382 (1998)). "And mixed questions of law and fact are reviewed under the clearly erroneous standard." *Id.* (citing *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001)).

¶ 18                    A.  Section 4-138.10 of the Illinois Pension Code

¶ 19    Defendants claim that the trial court relied on the incorrect belief that section 4-138.10 is not to be applied retroactively because the provision "plainly reaches pre-enactment mistakes" and the Lockport Fund only used the provision to "*prospectively* correct Cronholm's overpaid benefit." We disagree.

¶ 20     "Traditionally, an amendment to a statute is not applied retroactively unless the legislature expressly states that intention." *Ray*, 2018 IL 170274, ¶ 31 (citing *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 37-38 (2001)). In *Landgraf*, 511 U.S. at 264, the United States Supreme Court explained that prospective application is the default rule and

6

that "[r]equiring clear intent assures that [the legislature] itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits." *Id.* ¶ 31.

¶ 21    On August 26, 2014, Public Act 98-1117 § 5 took effect and amended 40 ILCS 5/3-144.2 by altering one "Mistake in Benefit" section and adding four new "Mistake in Benefit" sections, including the section at issue. *Id.* ¶ 32.

> The amended statutory provision provides, in relevant part:
>
> "If the Fund commits a mistake by setting any benefit at an incorrect amount, it shall adjust the benefit to the correct level as soon as may be practicable after the mistake is discovered. The term 'mistake' includes a clerical or administrative error executed by the Fund or participant as it relates to a benefit under this Article; however, in no case shall 'mistake' include any benefit as it relates to the reasonable calculation of the benefit or aspects of the benefit based on salary, service credit, calculation or determination of a disability, date of retirement, or other factors significant to the calculation of the benefit that were reasonably understood or agreed to by the Fund at the time of retirement." 40 ILCS 5/3-144.2(a) (West 2014).

¶ 22    In total, "all five [Mistake in Benefit] sections contain virtually identical language that requires a mistake in a pension benefit amount to be recalculated as soon as the mistake is discovered." *Ray*, 2018 IL 170274, ¶ 32. "[T]he legislature explicitly included retroactive language in three of the impacted pension plans [(General Assembly Retirement System, State Employees' Retirement System, and Judges Retirement System of Illinois)]." *Id.* ¶ 32 (citing 40 ILCS 5/2-155.1 §§ 2-155.1, 14148.1, 18-162.1). However, in contrast, "[t]he Police Pension

7

Fund section and the Firefighters' Pension Fund section do not contain a reference to retroactive application of the amendment." *Id.* ¶ 32. Accordingly, we must conclude the Illinois legislature did not intend section 4-138.10 to have retroactive application. See *Certain Taxpayers v. Sheahen*, 45 Ill. 2d 75, 84 (1970) ("The legislative intent should be sought primarily from the language used in the statute.").

¶ 23        In *Ray*, an accounting firm in charge of providing calculations for pensioner Ray's retirement benefit provided him with incorrect retirement benefit information. *Ray*, 2018 IL 170274, ¶ 4. Due to this, upon retiring in March 2014, Ray received a benefit that was $4,000 greater than his pension would have been if calculated in an alternate manner. *Id.* Approximately two years later, "[o]n April 20, 2016, the Pension Fund informed Ray that it was reducing his retirement benefit by the extra $4,000 he had been receiving." *Id.* ¶ 5. Ray filed a complaint alleging negligence on behalf of the pension fund, which the fund sought to dismiss. *Id.* ¶ 6. The pension fund's motion was denied by the circuit court and the fund appealed. *Id.* ¶ 7.

¶ 24        The appellate court held that the previous "Mistake in Benefit" provision under the Police Pension Fund statute was applicable to Ray's "Mistake in Benefit" analysis because the "miscalculation" made by the Pension Board took effect on or around March 1, 2014, when the original "Mistake in Benefit" statute was operative. *Id.* ¶ 29. The *Ray* court further explained that the proper "triggering event" is not the discovery of the mistake but "the date the benefits mistake was finalized by the Pension Fund." *Id.* ("Simply stated, if there had been no mistake or error, there would be nothing to be discovered.") In the instant case, the triggering event (the date the benefits mistake was finalized by the Lockport Board) was November 2009. Since the new "Mistake in Benefit" statute became effective in August 2014, and it applies prospectively only, the general 35-day limitation period of the Administrative Review Law applies.

8

¶ 25    Final administrative decisions of a pension fund may be reviewed by judicial courts pursuant to the Administrative Review Law. *Id.* ¶ 19 (citing 40 ILCS 5/3-148 (West 2014)). An administrative decision is defined as "any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." *Id.* (citing 735 ILCS 5/3-101 (West 2014)). More specifically, "provisions of the Administrative Review Law *** shall apply to and govern all proceedings for the judicial review of final administrative decisions of the retirement board." *Id.* (citing 40 ILCS 5/5-228 (West 2014)). "Only valid final decision can be subject to administrative review." *Id.* ¶ 21 (citing 735 ILCS 5/3-103 (West 2014)). Review of a final administrative decision "must be commenced within 35 days from the date that the decision to be reviewed 'was served upon the party affected by the decision.'" *Id.* ¶ 19 (citing 735 ILCS 5/3-103 (West 2014)). The agency does not have jurisdiction to modify its final decision beyond the 35-day time limitation. *Id.* ¶ 19 (citing *Kosakowski v. Board of Trustees of the City of Calumet City Police Pension Fund*, 389 Ill. App. 3d 381, 383-84 (2009)).

¶ 26    In *Ray*, the court determined "that [Ray's] award was final because [he] received his benefits and because the award was included in an Illinois Department of Insurance Audit." *Id.* ¶ 25. The Illinois Department of Insurance audit triggered the pension fund's correspondence with Ray, notifying him that his pension benefit would be reduced by $4,000 per year. *Id.* Here, Cronholm was first awarded his combined retirement pension benefit from both pension funds in November 2009. Approximately seven years later, in 2016, Lauterbach & Amen began working for the Lockport Fund, at which time they conducted an Illinois Department of Insurance Audit. The audit revealed, *inter alia*, that Cronholm had been collecting a proportional amount of combined retirement benefits from both the Oak Brook Fund and Lockport Fund.

9

¶ 27    Thus, like the plaintiff in *Ray*, Cronholm's pension benefit, first distributed to him in 2009, was a "valid final decision" because Cronholm in fact "received his benefits and because the award was included in an Illinois Department of Insurance Audit." *Id.* ¶ 25 That audit is what triggered the Lockport Fund's December 15, 2016 and February 24, 2017 letters to Cronholm, notifying him of the "overpayment error" and offering him options for repaying the overpaid sum of $21,118.44 (later corrected to $2,455.28). Accordingly, because the legislature did not intend for section 4-138.10 of the Illinois Pension Code to be applied retroactively, and Cronholm's November 2009 pension award was a final decision which terminated proceedings before the Lockport Board, the Board had a 35-day jurisdictional window after the issuance of that pension decision to "correct" Cronholm's pension benefit.

¶ 28    B. "Mistake" as Written in Section 4-138.10 of the Illinois Pension Code

¶ 29    The Lockport Board also argues that the "mistake" that it corrected in this case was a clerical one that can be corrected retroactively under 4-138.10. In this alternative argument, the Board attempts to convince this court that we should not follow *Ray* and that section 4-138.10 is a procedural change, which can be applied retroactively because it simply changes the way a challenge to a pensioner's benefit can occur. As previously stated, we believe *Ray* is good law and its analysis provides a clear map, using *Landgraf*, for determining that the enactment of section 4-138.10 is not a procedural but a substantive change. *Landgraf,* 511 U.S. at 280.

¶ 30    Nevertheless, even if section 4-138.10 *did* apply retroactively, the Lockport Board's failure to use the correct information when formulating Cronholm's pension benefit is not the type of "mistake" that the amended "Mistake in Benefit" legislation affords correction. In *Ray*, the pension fund was notified by the Department of Insurance that it had incorrectly interpreted a section of the Pension Code and, as a result, an incorrect final rate of pay had been used to

10

determine Ray's pension benefit. *Ray*, 2018 IL 170274, ¶ 36. The *Ray* court clarified that the term "error" included in the original Police Pension Code statute was "in conformity with the newer definition of the term 'mistake' [found in section 4-138.10]." Since "the legislature made it clear that that [the term] 'mistake' can never include calculation of the benefit based on salary, service credit, date of retirement, or other significant facts", the *Ray* court held that the miscalculation at issue was not an error capable of being modified outside of the Administrative Review Law's 35-day jurisdictional window. *Id.* ¶ 37 (citing 40 ILCS 5/3-144.2(a) (West 2014)).

¶ 31        Similarly, "[i]n *Kosakowski v. Board of Trustees of the City of Calumet City Police Pension Fund*. 389 Ill. App. 3d 381, 383-84, the appellate court affirmed the circuit court's judgment [*sic*] reversing a reduction in plaintiff's pension benefits" under the original Police Pension Code, after the pension board used the wrong date and salary information to determine plaintiff's benefits. *Id.* In rejecting the pension board's request to modify the pensioner's benefits, the *Kosakowski* court looked to the legislative intent of the statute and found "that if the legislature had intended only arithmetical errors, the statute would have been written that way." *Id.* Accordingly, since "there was no arithmetical error, no evidence that the board erred in determining the plaintiff's final salary, and no evidence that he was paid more than the amount listed in the final decision", the court concluded that the miscalculation by the pension board was not an "error" within the meaning of the statute. *Id.*

¶ 32        Here, Cronholm received a letter from Barrett on November 30, 2009, stating that a pension benefit calculation worksheet was enclosed and that the figures included in the worksheet were "verified against the Illinois Department of Insurance's calculator and approved by the Pension Board." The Lockport Fund then intentionally used Oak Brook's calculation to formulate its portion of Cronholm's combined retirement benefit. Accordingly, as the legislature

11

intended for the term "mistake" in section 4-138.10 to be synonymous with the term "error" used in the previous "Mistake in Benefit" statute at issue in *Ray* and *Kosakowski*, even if section 4-138.10 applied retroactively, the Lockport Board's miscalculation of Cronholm's pension benefit is not the type of "mistake" to which the amended "Mistake in Benefit" legislation refers.

¶ 33　　　　　　　　　　　　　III. CONCLUSION

¶ 34　　　　　　The judgment of the circuit court of Will County is affirmed.

¶ 35　　　　　　Board decision reversed. (Administrative review)